THIS ORDER IS APPROVED.

Dated: September 5, 2025

Brenda Moody Whinery, Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>MURPHY R. KITTRELL, JR. and<br>BARBARA C. KITTRELL,<br><br>Debtors. | Chapter 7 Proceeding<br><br>Case No. 4:22-bk-01130-BMW |
| CAROL THEISEN and NITIN "BOBBY" PATEL,<br><br>Plaintiffs,<br><br>v.<br><br>MURPHY R. KITTRELL, JR. and<br>BARBARA C. KITTRELL,<br><br>Defendants. | Adversary Case No. 4:22-ap-00123-BMW<br><br>**MEMORANDUM DECISION** |

Before the Court is the *Complaint to Deny Discharge Under 11 U.S.C. § 727(a)(4) (False Oath)* (the "Complaint") (DE 1)[1] filed by Carol Theisen ("Ms. Theisen") and Nitin "Bobby" Patel ("Mr. Patel," and collectively with Ms. Theisen, the "Plaintiffs"), in which the Plaintiffs ask the Court to deny Murphy R. Kittrell, Jr. ("Mr. M. Kittrell") and Barbara C. Kittrell ("Ms. Kittrell," and collectively with Mr. M. Kittrell, the "Debtors" or "Kittrells") a discharge pursuant to § 727(a)(4)(A) of the Bankruptcy Code on the basis that the Kittrells knowingly and fraudulently made at least one false oath or account in or in connection with their pending bankruptcy case

---

[1] "DE" refers to entries on the docket in this adversary proceeding.

(the "Bankruptcy Case"). The Kittrells deny that they have made false oaths or accounts in or in connection with their Bankruptcy Case and argue that they completed their schedules and statements to the best of their ability.

On June 11, 2025, the Court held a trial on the Complaint (the "Trial"), at which time the parties presented evidence, and testimony was provided by the Kittrells; John Greg Theisen ("Mr. Theisen"), who assigned judgments against the Kittrells to Ms. Theisen, which judgments serve as the basis for Ms. Theisen's claim in the Bankruptcy Case; and Niko Kittrell ("Mr. N. Kittrell"), who is the Debtors' son. On July 18, 2025, the parties submitted post-trial briefs, and the Court took this matter under advisement.

Based upon the pleadings, arguments of counsel, testimony offered, exhibits admitted into evidence, and entire record before the Court, the Court now issues its ruling.

## I. Jurisdiction

The Court has jurisdiction over these proceedings, which arise under the Bankruptcy Code. 28 U.S.C. § 1334(b); *In re Wilshire Courtyard*, 729 F.3d 1279, 1285 (9th Cir. 2013). The parties agree that this Court has jurisdiction to adjudicate this matter. (DE 1 at ¶ 2; DE 36 at ¶ 2). This is a core proceeding involving an objection to the entry of a discharge, and this Court therefore has the authority to enter final orders and judgments. *Stern v.* Marshall, 564 U.S. 462, 472, 131 S. Ct. 2594, 2601-02, 180 L. Ed. 2d 475 (2011). Given the silence in the pleadings, the parties are deemed to consent to the entry of final orders and judgments by this Court. Local Rule Bankr. P. 7012-1.

## II. Findings of Fact and Procedural Background

The record reflects that in or about 2005, the Kittrells executed documentation to form a revocable living trust (as subsequently amended, the "Living Trust"). (*See* 6/11/25 Trial Tr. 35:9-10, 117:4; TE D; TE E).[2] In addition to being the settlors of the Living Trust, the Kittrells have, at all relevant times, been the trustees of the Living Trust. (6/11/25 Trial Tr. 9:20-10:19; DE 85 at 7, ¶ II.viii). According to the Kittrells', their primary residence was transferred to and is held in the name of the Living Trust. (6/11/25 Trial Tr. 17:23; TE O at 00394).

---

[2] References to "TE" are references to exhibits admitted into evidence during the Trial.

In or about 2011, the judgments that have been assigned to Ms. Theisen (the "Theisen Judgments"), which judgments form the basis for Ms. Theisen's claim in the Bankruptcy Case, were entered. (DE 85 at 5-6, ¶¶ II.ii-iv; 6/11/25 Trial Tr. 14:15-15:9, 63:7-11; TE 1 at 00010-00012). The Theisen Judgments awarded judgment against the Kittrells and others in the sum of $1,501,546.25 plus interest, attorneys' fees, and taxable costs.[3] (DE 85 at 5-6, ¶¶ II.ii-iv). The Theisen Judgments arose as a result of land and construction loans that were not repaid. (*See* 6/11/25 Trial Tr. 63:3-63:6, 103:7-9).

In or about 2012, Mr. M. Kittrell became involved in the medical marijuana industry. (*See* 6/11/25 Trial Tr. 80:22-81:1). As explained by Mr. M. Kittrell, the State of Arizona awarded medical marijuana licenses to marijuana dispensaries referred to by the parties as Greenmed and Purplemed, and Mr. M. Kittrell acquired ownership interests in for-profit management companies that contracted with Greenmed and Purplemed to manage the Greenmed and Purplemed dispensaries. (6/11/25 Trial Tr. 80:15-81:1).

On June 3, 2013, the Kittrells executed an *Amendment to Murphy and Barbara Kittrell Living Trust* (the "Living Trust Amendment") (TE D). The Living Trust Amendment purported to transform the Living Trust from a revocable trust to an irrevocable trust. (6/11/25 Trial Tr. 16:15-17:9; TE D at 00045). The Kittrells nevertheless continued to regularly use assets of the Living Trust to pay their personal expenses and purported to retain ownership and/or control of assets held by the Living Trust, including their residence. (6/11/25 Trial Tr. 17:20-24:13, 32:19-22, 47:15-19, 51:23-52:2; TE 57; TE 59; TE 68; TE 69). Pursuant to Mr. M. Kittrell's testimony, he and Ms. Kittrell are not prohibited from using assets in a trust they form to pay for their personal expenses, regardless of whether the trust is labelled or intended to be a revocable or irrevocable trust, unless the trust documents explicitly state that they cannot. (*See* 6/11/25 Trial Tr. 112:21-113:12).

On or about April 25, 2014, Mr. M. Kittrell borrowed money from Mr. Patel, as evidenced by a promissory note in the amount of $340,000, which note was not repaid. (DE 85 at 6, ¶¶ II.v-

---

[3] Ms. Theisen has filed a proof of claim in the amount of $4,113,446.63 in the Kittrells' Bankruptcy Case. (TE K).

vi; 6/11/25 Trial Tr. 101:12-102:4).

On or about October 21, 2014, the Kittrells executed the *Kittrell Children's Trust Trust Agreement* (the "Children's Trust Agreement") (TE A), which established the Kittrell Children's Trust (the "Children's Trust"), which purports to be an irrevocable trust. The Kittrells have been the trustees of the Children's Trust since its formation. (TE A at 00001; DE 85 at 7, ¶ II.viii). Pursuant to the terms of the Children's Trust Agreement, the Trustee shall hold the trust estate and any additions thereto under the terms and conditions set forth in the Children's Trust Agreement. (TE A at 00005).

Also on or about October 21, 2014, the Kittrells filed articles of organization for a series of "MKHS" entities, including MKHS Holding Company ("MKHS Holding"), MKHS, LLC ("MKHS"), MKHS Cultivation Services, LLC ("MKHS Cultivation"), and MKHS Dispensary Services, LLC ("MKHS Dispensary Services," and collectively with MKHS Holding, MKHS, and MKHS Cultivation, the "MKHS Entities"). (DE 85 at 6, ¶ II.vii). The membership interests in the MKHS Entities were then transferred by the Kittrells to the Children's Trust. (DE 85 at 6, ¶ II.vii). Mr. M. Kittrell testified that the Children's Trust owns MKHS Holdings, which owns MKHS, which owns MKHS Cultivation and MKHS Dispensary Services. (6/11/25 Trial Tr. 83:24-84:8). Mr. M. Kittrell also directed the transfer of the management rights pertaining to the Greenmed and Purplemed marijuana dispensaries to MKHS Cultivation and MKHS Dispensary, and signed the management agreements as President of MKHS Cultivation and Managing Member of MKHS Dispensary Services. (6/11/25 Trial Tr. 80:22-81:7, 96:19-98:23; TE 33; TE 34). Mr. M. Kittrell further testified that he directed this restructuring because creditors were interfering with his marijuana business. (6/11/25 Trial Tr. 96:9-15).

Ms. Kittrell testified that she and Mr. M. Kittrell formed the Children's Trust to protect their assets against "thieves," including certain of the Kittrells' creditors, for the benefit of their children. (6/11/25 Trial Tr. 11:21-14:2; TE 120 at 01334-01338). The Kittrells' children are the named beneficiaries of the Children's Trust in the Children's Trust Agreement, and according to Mr. N. Kittrell, the current beneficiaries of the Children's Trust are the Kittrells' children and grandchildren. (TE A at 00001, § 1.02; 6/11/25 Trial Tr. 139:9-11). The Children's Trust has

purportedly made no distributions to beneficiaries. (6/11/25 Trial Tr. 58:17-21, 87:19-23).

The Children's Trust Agreement also contains a Limited Power of Appointment provision, which provides in part:

> (1) During the lifetime of the Grantor, Niko Kittrell shall have:
> . . .
> (b) the authority (exercisable in a non-fiduciary capacity) to add to the beneficiaries entitled to receive income or principal any person or person who are descendants of the Grantor's parents, or an organization described by the provisions of section 170(c) and section 2055(a) of the Internal Revenue Code;
> (c) the authority (exercisable in a non-fiduciary capacity) to remove any person as a beneficiary entitled to receive income or principal provided that the remaining beneficiaries are persons who are descendants of the Grantor's parents, or an organization described by section 170(c) and section 2055(a) of Internal Revenue Code; and
> (d) the authority (exercisable in a non-fiduciary capacity) to revoke the Trusts created hereunder and distribute the trust estate to any person or persons who are descendants of the Grantor's parents, or an organization described by the provisions of section 170(c) and section 2055(a) of the Internal Revenue Code[.]

(TE A at 00002, § 2.03).

The Kittrells understood that given the language of the Limited Power of Appointment provision, they could be added as beneficiaries of the Children's Trust and/or receive the assets of the Children's Trust in the event the Children's Trust Agreement were to be revoked.[4] (*See* 6/11/25 Trial Tr. 37:10-43:15, 44:5-13, 46:6-11; TE 120 at 01352-01354). Mr. N. Kittrell acknowledged that he has exercised his rights under the Limited Power of Appointment provision on at least one occasion. (6/11/25 Trial Tr. 137:21-138:9; *see* TE B).

The Children's Trust Agreement also contains a Power to Substitute Property provision, which provides in relevant part:

---

[4] The Court does not find Ms. Kittrell's or Mr. N. Kittrell's testimony that the Limited Power of Attorney provision is not consistent with the intent of the settlors to be credible, and any such testimony is directly contrary to the plain language of the Children's Trust Agreement.

> The Grantor appoints Murphy Kittrell, Jr., individually, as the Substitutor. The Substitutor shall have the power while Grantor is living, acting solely in a non-fiduciary capacity within the meaning of Code Sec. 675(4)(C), without the approval or consent of any person, including the Trustee, to acquire the assets of any trust held under this instrument, by substituting property of an equivalent value. The Grantor directs that this power is not assignable, and any attempted assignment will make this power void.

(TE A at 00003, § 2.04).

The Kittrells have, at times, testified that they are or were paid for serving as trustees of the Children's Trust, but have, at other times, asserted that they do not receive any compensation for serving as trustees, and are instead W-2 employees paid by one of the MKHS Entities or a related entity.[5] (6/11/25 Trial Tr. 87:24-92:14, 131:5-16; TE 14 at 00254-00255; TE 121 at 01543-01544).

Mr. Theisen testified that after the Kittrells' October 2014 transfer of assets to the Children's Trust, Mr. M. Kittrell continued to hold himself out as the owner of certain of the transferred assets. (6/11/25 Trial Tr. 64:1-20, 66:16-67:6, 67:23-69:13, 72:5-73:1). Further, after the transfer of the MKHS Entities to the Children's Trust, the record reflects that the Kittrells withdrew cash from an MKHS account (the "MKHS Account") and signed checks and paid bills using the MKHS Account.[6] (6/11/25 Trial Tr. 92:18-94:13; TE 116). The Kittrells also had personal checks in the name of Mr. M. Kittrell printed for the MKHS Account. (6/11/25 Trial Tr. 104:4-107:9; TE 117 at 01261).

In 2017, the Kittrells pledged the assets of MKHS, MKHS Holding, and the Children's Trust as collateral for a personal loan (6/11/25 Trial Tr. 108:6-109:20; TE 46; TE 47), and in an agreement dated October 22, 2019, Mr. M. Kittrell represented that he was the sole owner of

---

[5] According to the Kittrells' filings in the Bankruptcy Case, the Kittrells have gross income of $21,900 per month, all of which is derived from their work as supervisors for ADND Payroll Services. (TE O at 00407-00408). Mr. N. Kittrell testified that Mr. M. Kittrell performs property management and maintenance services for the family marijuana business, and that Ms. Kittrell performs administrative work, but also that the Kittrells are retired and/or full-time nannies for their children. (6/11/25 Trial Tr. 141:1-142:13).

[6] The record reflects that in January 2017, the Kittrells withdrew no less than $42,000 from MKHS Account. (6/11/25 Trial Tr. 92:18-94:13; TE 116 at 01225-01226).

MKHS Holding.[7] (6/11/25 Trial Tr. 84:9-87:4; TE 121 at 01620-01621).

According to the Kittrells, neither the Living Trust nor the Children's Trust has ever filed a tax return, and the Children's Trust has never had a bank account. (6/11/25 Trial Tr. 24:10-13, 47:9-14, 51:12-22).

In October 2019, the Kittrells, the Living Trust, the Children's Trust, and related entities asserted in state court filings that Greenmed and Purplemed had a combined market value of more than $30,000,000. (6/11/25 Trial Tr. 48:19-49:25; TE 15 at 00259, 00262). At some point, Purplemed was sold. (*See* 6/11/25 Trial Tr. 50:1-3). Greenmed remains affiliated with the Children's Trust and MKHS Entities, and Mr. Kittrell testified that he is a director of Greenmed. (6/11/25 Trial Tr. 48:6-12, 79:23-24). The Kittrells did not opine as to the value of the Greenmed dispensary during the Trial. (*See* 6/11/25 Trial Tr. 48:4-51:10, 94:14-95:17).

On July 15, 2020, the Kittrells executed a *First Amendment and Restatement of the Murphy and Barbara Kittrell Revocable Trust Dated October 27, 2005* (TE E) in which they purport to revoke the Amendment to Living Trust Agreement, whereby transforming the Living Trust back to a revocable trust. (6/11/25 Trial Tr. 33:13-36:10, 52:22-53:1). Ms. Kittrell testified that she was aware of no reason why she and Mr. M. Kittrell could not change the Children's Trust into a revocable trust just as they had done with the Living Trust. (6/11/25 Trial Tr. 36:11:15; *see also* 6/11/25 Trial Tr. 53:9-23). Overall, the Kittrells' testimony regarding the Living Trust and the Children's Trust and their control and dealings with the assets of such trusts was vague, inconsistent, and thus lacking in credibility.

On February 25, 2022 (the "Petition Date"), the Kittrells filed their petition for relief under Chapter 7 of the Bankruptcy Code (the "Petition") (TE O at 00377-00384).

The Kittrells, through counsel, filed their *Schedule A/B: Property* ("Schedules") and *Statement of Financial Affairs for Individuals Filing for Bankruptcy* ("SOFA") with the Petition. (TE O).

/ / /

/ / /

---

[7] Mr. M. Kittrell testified that this was a mistake. (6/11/25 Trial Tr. 84:9-87:10).

The Schedules include the following disclosures pertaining to the Kittrells' interests in trusts and equitable and/or future interests in property:

> 25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit
> ☐ No
> ■ Yes. Give specific information about them...
>
> | Debtors are the Settlors of The Murphy and Barbara Kittrell Living Trust formed on October 27, 2005, which is a revocable trust that holds only one asset: Debtor's primary residence located at 10640 E. Elkridge Pl., Tucson, AZ 85730. No value to debtors other than their homestead which is fully exempt. | $0.00 |
> |---|---|
> | Debtors are the Settlors of The Kittrell Children's Trust formed on October 20, 2014, which is an irrevocable trust in which Debtors' children are the sole beneficiaries. No value to debtors. | $0.00 |

(TE O at 00394).

As reflected below, on the SOFA, the Kittrells identified no property being held or controlled for another.

> **Part 9:** Identify Property You Hold or Control for Someone Else
>
> 23. Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.
>
> ■ No
> ☐ Yes. Fill in the details.

(TE O at 00418).

The Kittrells disclosed the following business connections:

> **Part 11:** Give Details About Your Business or Connections to Any Business
>
> 27. Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?
>   ☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time
>   ■ A member of a limited liability company (LLC) or limited liability partnership (LLP)
>   ☐ A partner in a partnership
>   ■ An officer, director, or managing executive of a corporation
>   ☐ An owner of at least 5% of the voting or equity securities of a corporation
>   ☐ No. None of the above applies. Go to Part 12.
>   ■ Yes. Check all that apply above and fill in the details below for each business.

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| A & K Coyote Properties, LLC<br>9420 E Golf Links, Ste 164<br>Tucson, AZ 85730 | | EIN:<br>From-To 7/13/2006 |
| A & K Safford Properties, LLC<br>9420 E Golf Links, Ste. 164<br>Tucson, AZ 85730 | | EIN:<br>From-To 6/1/2006 |
| A & K Skyline Development, LLC<br>5210 E Pima St. #110<br>Tucson, AZ 85712 | | EIN:<br>From-To 7/23/2003 |
| A & K Ventures, LLC<br>5210 E Pima St #110<br>Tucson, AZ 85712 | | EIN:<br>From-To 4/9/2001 |
| AKG Group LLC<br>6625 N Casas Adobes Rd<br>Tucson, AZ 85704 | | EIN:<br>From-To 6/3/2004 |
| AZ Purple Monkey LLC<br>9420 E Golf Links #285<br>Tucson, AZ 85730 | | EIN:<br>From-To 2/1/2018 |
| Clone Depot, LLC<br>9420 E Golf Links #285<br>Tucson, AZ 85730 | | EIN:<br>From-To 7/26/2016 |
| DM Property Development, LLC<br>8055 E Shadow Canyon<br>Tucson, AZ 85750 | | EIN:<br>From-To 12/9/2003 |
| MD Transportation, LLC<br>8055 E Shadow Canyon<br>Tucson, AZ 85750 | | EIN:<br>From-To 8/15/2005 |
| MK Equipment Holdings, LLC<br>9420 E Golf Links #285<br>Tucson, AZ 85730 | | EIN:<br>From-To 7/27/2016 |
| MK Golf Links, LLC<br>9420 E Golf Links #285<br>Tucson, AZ 85730 | | EIN:<br>From-To 7/26/2016 |
| MK Littletown, LLC<br>9420 E Golf Links #285<br>Tucson, AZ 85730 | | EIN:<br>From-To 7/26/2016 |
| MK Wentworth, LLC<br>9420 E Golf Links #285<br>Tucson, AZ 85730 | | EIN:<br>From-To 7/26/2016 |
| MK Wilmot, LLC<br>9420 E Golf Links #285<br>Tucson, AZ 85730 | | EIN:<br>From-To 8/22/2016 |

///

///

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br>Dates business existed |
|---|---|---|
| New Copia, LLC<br>9420 E Golf Links #285<br>Tucson, AZ 85730 | | EIN:<br>From-To 10/23/2017 |
| Omilas, LLC<br>9010 W George St<br>Tucson, AZ 85735 | | EIN:<br>From-To 6/7/2016 |
| Purple Healing Center LLC<br>3615 E Golf Links<br>Tucson, AZ 85713 | | EIN:<br>From-To 1/11/2013 |
| Purple Monkey 1, LLC<br>9420 E Golf Links #285<br>Tucson, AZ 85730 | | EIN:<br>From-To 2/1/2018 |
| Tucson Purple Group, LLC<br>2200 E River Rd Ste 120<br>Tucson, AZ 85718 | | EIN:<br>From-To 4/3/2014 |
| Turnkey Technologies, LLC<br>1200 N El Dorado Pl Ste G-700<br>Tucson, AZ 85715 | | EIN:<br>From-To 5/19/2015 |
| MKHS Properties, LLC<br>3615 E Golf Links Rd<br>Tucson, AZ 85718 | | EIN:<br>From-To 1/13/2017 |
| MKHS Littletown, LLC<br>9420 E Golf Links #285<br>Tucson, AZ 85730 | | EIN:<br>From-To 1/13/2017 |
| 6467 E Littletowns, LLC<br>9420 E Golf Links #285<br>Tucson, AZ 85730 | | EIN:<br>From-To 1/13/2017 |
| BBC Funding Group, LLC<br>3615 E Golf Links Rd<br>Tucson, AZ 85713 | | EIN:<br>From-To 6/17/2017 |
| Desert Skys Ventures, LLC<br>9420 E Golf Links #164<br>Tucson, AZ 85730 | | EIN:<br>From-To 9/8/2017 |
| FFV Holdings, LLC<br>3615 E Golf Links Rd<br>Tucson, AZ 85713 | | EIN:<br>From-To 6/22/2017 |
| River Road Management Serv. Hld.<br>Co. LLC<br>2200 E River Rd Ste 120<br>Tucson, AZ 85718 | | EIN:<br>From-To 7/10/2017 |
| Synergy Delivery Services, LLC<br>9420 E Golf Links #285<br>Tucson, AZ 85730 | | EIN:<br>From-To 1/13/2017 |

| Business Name Address (Number, Street, City, State and ZIP Code) | Describe the nature of the business / Name of accountant or bookkeeper | Employer Identification number (Do not include Social Security number or ITIN.) / Dates business existed |
|---|---|---|
| Synergy Health & Wellness, Inc. 9420 E Golf Links #285 Tucson, AZ 85730 | | EIN: From-To 8/2/2016 |
| Tucson Health & Wellness Center, Inc. 9420 E Golf Links #285 Tucson, AZ 85730 | | EIN: From-To 7/15/2016 |

(TE O at 00419-00421).

The Kittrells testified that they reviewed the Schedules and SOFA before they were filed, and testified that the Schedules and SOFA are complete. (6/11/25 Trial Tr. 60:8-13, 133:17-19).

### III. Conclusions of Law

Pursuant to § 727(a)(4)(A), the Kittrells are not entitled to a discharge if they "knowingly and fraudulently, in or in connection with the case made a false oath or account[.]" "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010) (quoting *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (9th Cir. BAP 2007). "[T]he opportunity to obtain a fresh start is . . . conditioned upon truthful disclosure." *Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58, 63 (9th Cir. BAP 1999) (quoting *In re Aubrey*, 111 B.R. 268, 274 (9th Cir. BAP 1990)).

To prevail on their § 727(a)(4)(A) claim, the Plaintiffs must establish, by a preponderance of the evidence, that: "(1) the debtor[s] made a false oath in connection with the [bankruptcy] case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently."[8] *In re Retz*, 606 F.3d at 1197 (quoting *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005)). "In keeping with the 'fresh start' purposes behind the Bankruptcy Code, courts should construe § 727 liberally in favor of debtors and strictly against parties objecting to discharge." *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1281 (9th Cir. 1996). That being said, "[w]hen factual findings are based on determinations regarding the

---

[8] The Debtors take issue with the fact that the Plaintiffs did not testify in support of their Complaint, and that the Plaintiffs did not call the Chapter 7 Trustee to testify, but as discussed herein, the focus of the Plaintiffs' § 727(a)(4)(A) claim is on the Debtors and the disclosures they made in their Bankruptcy Case.

credibility of witnesses, . . . great deference [is given] to the bankruptcy court's findings . . . ." *In re Retz*, 606 F.3d at 1196.

### 1. The Debtors Must Have Made a False Oath in Connection with their Bankruptcy Case

"A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath." *In re Retz*, 606 F.3d at 1196 (quoting *In re Khalil,* 379 B.R. at 172).

As discussed above, the Kittrells disclosed the following information about the Children's Trust on their Schedules: "Debtors are the Settlors of The Kittrell Children's Trust . . . , which is an irrevocable trust in which Debtors' children are the sole beneficiaries. No value to debtors." The Kittrells disclosed on their SOFA that they did not hold or control any property for anyone else, including property held in trust. However, the Kittrells do not dispute that, as of the Petition Date, they were not only the settlors of the Children's Trust, but also the trustees of the Children's Trust, charged with holding the trust estate, which includes the MKHS Entities and any other assets of the Children's Trust. In addition, Mr. M. Kittrell, pursuant to § 2.04 of the Children's Trust, has unfettered authority to acquire assets of the Children's Trust by substituting property determined by him to be of equivalent value. Further, the Kittrells did not disclose that they are potential beneficiaries under the Children's Trust Agreement.

Unlike the Kittrells' disclosures pertaining to the Living Trust, which include a description of at least one asset purportedly held therein, the Kittrells did not and have not disclosed the assets of the Children's Trust, which assets remain under their control, in their Bankruptcy Case. The record reflects that the MKHS Entities are held by the Children's Trust, yet none of these entities are disclosed on the Schedules or SOFA. Further, the Kittrells' relationship with such entities during the four-year period preceding the Petition Date are not disclosed, including Mr. M. Kittrell's officer/manager roles with MKHS Dispensary Services and MKHS Cultivation and his role as a director of Greenmed.

Given the nature of the omissions set forth above, and based upon the totality of the circumstances, the Court finds that the Kittrells' failure to disclose their role as trustees of the

Children's Trust, failure to disclose the true nature of their interests in and rights pertaining to the Children's Trust, failure to disclose the assets held in the Children's Trust, and failure to disclose connections to various entities and the entities themselves (collectively, the "Omissions") constitute false oaths made in connection with the Bankruptcy Case.

### 2. The Oath Must Have Related to a Material Fact

"Materiality is broadly defined." *In re Wills*, 243 B.R. at 62. "A fact is material 'if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.'" *In re Retz*, 606 F.3d at 1198 (quoting *In re Khalil*, 379 B.R. at 173). "An omission or misstatement that 'detrimentally affects administration of the estate' is material." *Id.* (quoting *In re Wills*, 243 B.R. at 63).

In this case, the Kittrells' failure to disclose their role as trustees of the Children's Trust and status as potential recipients of the trust's assets are omissions that pertain directly to the Kittrells' financial affairs. Further, given the nature of the Children's Trust, the assets held in the Children's Trust likewise bear on the Kittrells' financial affairs, as do the Kittrells' roles and business connections with the entities affiliated with the Children's Trust. Given the circumstances surrounding the Children's Trust, the Court finds that the Kittrells' Omissions were material.

### 3. The Oath Must Have Been Made Knowingly

"A debtor 'acts knowingly if he or she acts deliberately and consciously.'" *In re Retz*, 606 F.3d at 1198 (quoting *In re Khalil*, 379 B.R. at 173). The Children's Trust Agreement was drafted at the direction of and executed by the Kittrells, the assets in the Children's Trust were transferred to the trust by or at the direction of the Kittrells, the Kittrells have remained the trustees of the Children's Trust, and the record reflects that the Kittrells have clear knowledge of Mr. M. Kittrells' ongoing undisclosed roles and business connections with entities owned by or affiliated with the Children's Trust. Further, the Kittrells acknowledged that they reviewed and signed their incomplete Schedules and SOFA before they were filed, attesting that such documents were complete and accurate. Given the foregoing, the Court finds that the Kittrells' Omissions regarding their roles and rights with respect to the Children's Trust, as well as the assets held

therein, were knowing and intentional.

### 4. The Oath Must Have Been Made Fraudulently

In order to establish the final element of their § 727(a)(4)(A) claim, the Plaintiffs must show that: (1) the Debtors made the Omissions; (2) the Debtors knew the Omissions were false when made; and (3) the Debtors made the Omissions with the intention and purpose of deceiving creditors. *In re Retz*, 606 F.3d at 1198-99. "Intent is usually proven by circumstantial evidence or by inferences drawn from the debtor's conduct." *Id.* at 1199. "Reckless indifference or disregard for the truth may be circumstantial evidence of intent, but is not sufficient, alone, to constitute fraudulent intent." *Id.*

In this case, Ms. Kittrell testified that the Kittrells formed the Children's Trust for the purpose of shielding their assets from creditors, and Mr. M. Kittrell confirmed that he directed and/or authorized the transfer of assets to the Children's Trust in order to hinder creditors' attempts to interfere with his business dealings. To date, the Kittrells have remained elusive about the assets held in the Children's Trust and the estimated value of such assets and their related business connections.

Although the Kittrells assert an advice of counsel defense, and debtors who act in reliance on the advice of their attorneys generally lack the requisite fraudulent intent to support a § 727(a)(4) denial of discharge,[9] in this case, the Kittrells' advice of counsel arguments pertain to the drafting of the relevant trust documents, not to the disclosures they have made in their Bankruptcy Case. The Kittrells have continued to maintain that their Schedules and SOFA are truthful and complete despite the plain language of trust agreements they signed and the clear record before the Court, which reflect that material omissions were made. Those omissions are attributable to the Kittrells.

The record before the Court reflects that the Kittrells made the Omissions with the clear intention and purpose of deceiving creditors.

Given the foregoing, the Plaintiffs have established that the Debtors are not eligible to

---

[9] *In re Retz*, 606 F.3d at 1199 (quoting *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir. 1986)).

receive a discharge pursuant to 11 U.S.C. § 727(a)(4)(A). The Court need not determine whether the Debtors knowingly and fraudulently made any additional false oaths or accounts in connection with their Bankruptcy Case.[10]

## IV. Conclusion

The Kittrells declared under penalty of perjury that, as of the Petition Date: (a) they were the settlors of the Children's Trust, in which trust they had no interest, and which trust was of no value to them; (b) they did not hold or control any property for anyone else; and (c) they did not have business connections with entities owned by or affiliated with the Children's Trust. The record reflects that, in fact, the Kittrells have at all relevant times been the trustees of the Children's Trust, hold undisclosed assets of the Children's Trust for the benefit of others, are potential beneficiaries of the Children's Trust, and have the ability to acquire the assets of the Children's Trust by substitution. In addition, Mr. M. Kittrell has held and continues to hold management and director roles in entities held by or affiliated with the Children's Trust, which roles were not disclosed.

Given the facts and circumstances in this case, it is the determination of the Court that the Kittrells' Omissions were material, and were made knowingly and fraudulently in an attempt to conceal assets and information from creditors, the Chapter 7 Trustee and the Court. The Kittrells are therefore not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(4)(A) of the Bankruptcy Code.

A judgment will issue contemporaneously with this Memorandum Decision.

**DATED AND SIGNED ABOVE.**

---

[10] The Court likewise makes no determination as to whether any assets held or purportedly held by the Children's Trust are assets of the Debtors' bankruptcy estate. The Chapter 7 Trustee's adversary proceeding to determine what assets are property of the estate and recover alleged avoidable transfers remains pending.